IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **ROBIN RUMMAGE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:23-cv-962-ALM-KPJ |
| **BLUEGREEN VACATIONS** | § | |
| **UNLIMITED INC. and BLUEGREEN** | § | |
| **VACATIONS CORPORATION,** | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATED MAGISTRATE JUDGE**

Pending before the Court is Defendants Bluegreen Vacations Unlimited Inc. and Bluegreen Vacations Corporation's ("Defendants") Motion to Compel Arbitration (the "Motion") (Dkt. 11), to which Plaintiff Robin Rummage ("Plaintiff") filed a response (the "Response") (Dkt. 14), and Defendants filed a reply (the "Reply") (Dkt. 17). For the reasons that follow, the Court recommends the Motion (Dkt. 11) be **GRANTED**.

### I. BACKGROUND

On October 27, 2023, Plaintiff Robin Rummage ("Plaintiff") filed her complaint (the "Complaint") (Dkt. 1), wherein she alleges that she "was discriminated against and terminated because of her sex (pregnancy)" and asserts a cause of action under Title VII of the Civil Rights Act of 1964 ("Title VII"). Dkt. 1 at 4. Specifically, Plaintiff alleges that she began working for Defendants in September 2019. *Id.* at 2. Plaintiff alleges that she informed Defendants that she was pregnant in October 2021, and was asked to step down from her role as a manager in April 2022 in anticipation of her maternity leave. *Id.* Plaintiff alleges that when she prepared to return to work after her maternity leave, Defendants' regional manager made unreasonable

1

requests regarding her ability to take time off and responded "with offensive and discriminatory comments" when she requested accommodations for pumping breast milk. *Id.* at 2–3. Plaintiff alleges that after she made a complaint to Human Resources, Defendants said they would provide a "station for breastfeeding" and requested Plaintiff to sign an agreement concerning the accommodation, which she refused to sign. *Id.* at 3. Plaintiff alleges she was subsequently terminated. *Id.*

On February 9, 2024, Defendants filed the Motion (Dkt. 11), wherein they seek an order compelling Plaintiff's claim to arbitration. *See* Dkt. 11. Defendants allege that Plaintiff was hired as a sales representative in September 2019. *Id.* at 2. Defendants allege that during her onboarding process, Plaintiff "voluntarily signed the Bluegreen Entities Arbitration Agreement" (the "Arbitration Agreement") on September 16, 2019. *Id.* Defendants further allege that the Arbitration Agreement was expressly labeled as such in the Welcome Onboarding Packet and was generally made available to Plaintiff through a workforce management portal "at all times during her employment." *Id.* Defendants allege that the Arbitration Agreement covers "all disputes between the parties . . . arising out of . . . the Employee's application for employment, employment, or termination of employment with the Company" and thus, Plaintiff's claims of discrimination and retaliation pursuant to Title VII are covered by the Arbitration Agreement. *See id.* at 3–4.

On February 29, 2024, Plaintiff filed the Response (Dkt. 14), wherein she argues that (1) she did not enter into a valid arbitration agreement; and (2) if the Court finds a valid arbitration agreement exists, the Court should find the Arbitration Agreement procedurally and substantively unconscionable. Dkt. 14 at 4, 6. Plaintiff also argues that the evidence supporting the Motion (Dkt. 11) does "not show a valid, executed agreement by the parties" because Exhibit A-1,

containing the Arbitration Agreement, lacks "any indication of a signature block." *Id.* at 6. Plaintiff further argues that "Exhibit A-2 allegedly showing Plaintiff's acceptance and acknowledgement of the [A]rbitration [A]greement" cannot show Plaintiff entered into the agreement because "the date of the agreement does not match" the date Defendants asserts that Plaintiff entered into the agreement. *Id.*

On March 8, 2024, Defendants filed the Reply (Dkt. 17), wherein they argue that (1) a valid arbitration agreement exists; and (2) the question of unconscionability is for the arbitrator. Dkt. 17 at 1, 3. Defendants also respond to Plaintiff's evidentiary arguments. First, Defendants supplement their evidence with the fully executed Arbitration Agreement containing both Plaintiff's and Defendants' representative's signatures. Dkt. 17-1 at 9–12. Second, Defendants clarify that the acceptance and acknowledgment shown in Exhibit A-2 was executed when Plaintiff was re-hired in the summer of 2020, following her lay-off in March 2020 due to the Covid-19 pandemic. *Id.* at 14–15. Defendants proffer that when Plaintiff was re-hired, she re-executed the Arbitration Agreement. *Id.* at 7, 14–15.

## II.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. Courts perform a two-step inquiry to determine whether arbitration must be compelled. *See Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009) (citation omitted). First, the court must determine whether the parties agreed to arbitrate the dispute. *See id.* This first inquiry is divided

into two subparts: (a) whether there is a valid agreement to arbitrate; and (b) whether the dispute in question falls within the scope of that arbitration agreement. *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009) (quoting *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008)). Second, the court must determine whether any applicable federal statute, policy, or waiver renders the claims nonarbitrable. *See id.* (quoting *Sherer*, 548 F.3d at 381).

### III.   ANALYSIS

**A.   Valid Agreement to Arbitrate**

"Arbitration agreements are contracts" and "[w]hether an enforceable agreement to arbitrate exist[s] . . . is a question of contract formation," which is "guided by ordinary state contract law principles governing the formation of contracts." *Vollmering v. Assaggio Honolulu, LLC*, No. 22-cv-2, 2022 WL 6246881, at *6 (S.D. Tex. Sept. 17, 2022) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)), *R. & R. adopted*, 2022 WL 6250679 (S.D. Tex. Oct. 6, 2022). The party seeking to compel arbitration "bears the burden of showing, by a preponderance of the evidence, that the arbitration agreement exists." *Id.* (citing *GC Servs. Ltd. P'ship v. Little*, No. 19-1180, 2019 WL 5425032, at *6 (S.D. Tex. Oct. 23, 2019)). The parties agree that Texas law is applicable to determining the validity of the Arbitration Agreement. *See* Dkts. 11; 14. "Arbitration agreements between employers and their employees are broadly enforceable in Texas." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citing *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008)). Further, "[a]n employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dall. Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006) (citing *In re Dillard Dep't Stores, Inc.*,

4

181 S.W.3d 370, 375 (Tex. App.—El Paso 2005, no pet.), *subsequent mandamus proceeding*, 186 S.W.3d 514 (Tex. 2006)).

Here, Defendants assert that Plaintiff signed the Arbitration Agreement on September 16, 2019, during her onboarding process when she was initially hired to work at Defendants' store. *See* Dkt. 11 at 2. Defendants further assert that Plaintiff also agreed to be bound by the Arbitration Agreement when she digitally accepted and acknowledged the Arbitration Agreement on June 10, 2020, following her re-hire. *See* Dkt. 17 at 3. Defendants submit as evidence the Arbitration Agreement which states in relevant part:

> This Arbitration Agreement between the undersigned Employee and Bluegreen [Vacations Corporation] . . . is intended to provide the exclusive means of resolving all Disputes, as defined below, which may arise between them. For purposes of this Agreement, Bluegreen Vacations Corporation includes any affiliated corporations, parent corporations, partnerships, divisions, subsidiaries, officers, directors, shareholders, principals, employees, agents, attorneys, successors, and assigns . . . .
>
> In consideration for their mutual promises, both parties, by entering into this Agreement, give up their right to trial by a court or by a jury. This Agreement is not a contract of employment but arises out of the Employee's employment or prospective employment by the Company. The parties agree that the Federal Arbitration Act ("FAA") applies to this Agreement because the Company's business involves interstate commerce.

Dkt. 11-1 at 6; 17-1 at 9. The evidence submitted by Defendants shows that Plaintiff electronically signed the Arbitration Agreement when she began working for Defendants on September 16, 2019, and re-executed the Arbitration Agreement when she was re-hired in the summer of 2020, after a brief lay-off due to the Covid-19 pandemic. *See* Dkt. 11-1 at 3; 17-1 at 7, 12, 14–15. Accordingly, the Court finds that Defendants have met their burden of establishing the existence of the Arbitration Agreement.

Plaintiff raises two arguments regarding the validity of the Arbitration Agreement: (1) Plaintiff argues that there was no meeting of the minds; and (2) Plaintiff argues that the agreement is unconscionable. *See* Dkt. 14.

### 1. Meeting of the Minds

Plaintiff argues that the Arbitration Agreement is not a valid and enforceable contract because "there could not have been a meeting of the minds between Plaintiff and Defendants." Dkt. 14 at 5. Specifically, Plaintiff argues that she "did not have a meaningful opportunity to read" the Arbitration Agreement because, during her orientation with the company, she was "brought up to a podium . . . and made to sign an iPad" while "an area manager for Defendants was clicking through screens on a power point." *Id.* Plaintiff concludes that because the Arbitration Agreement was "not discussed or presented" at the orientation, she did not have knowledge of the material terms of the contract and, thus, it is "impossible for Plaintiff to have agreed to them." *Id.* Plaintiff alleges that this "standardized process [was] designed to keep her in the dark." *Id.* at 6. Defendants respond that "Plaintiff does not make a direct and unequivocal denial that she signed the document," nor does she allege "fraud, misrepresentation or deceit in connection with signing the Arbitration Agreement." Dkt. 17 at 2. Accordingly, Defendants argue that "Plaintiff is bound by the terms of the Arbitration Agreement, that she signed twice." *Id.* at 3.

"The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied) (citations omitted). "Under Texas law, '[a] party's signature on a written contract is 'strong evidence' that the party unconditionally assented to its terms.'" *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, No. 13-cv-1096, 2013 WL 4603165, at *3 (N.D. Tex. Aug. 29, 2013) (quoting *In re Dec. Nine*

*Co.*, 225 S.W.3d 693, 699 (Tex. App.—El Paso 2006, no pet.)). "Unless a party can show she was fraudulently induced to sign a contract, she 'is bound by the terms of the contract [s]he signed, regardless of whether [s]he read it or thought it had different terms.'" *Id.* (quoting *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2006)).

Here, Plaintiff signed the Arbitration Agreement upon her initial employment in September 2019, Dkt. 17-1 at 12, and Plaintiff again acknowledged her assent to the Arbitration Agreement when she was re-hired in June 2020. *Id.* at 7. Plaintiff has not made any factual allegation that she did not sign the Arbitration Agreement. Instead, Plaintiff relies on her ignorance as to the contents of what she was being asked to sign. *See* Dkt. 14 at 5. Plaintiff, in her affidavit, attests that she "did not have a meaningful opportunity to read this agreement," the "agreement was not made available to [her] during the orientation," she "did not know [she] was signing an arbitration agreement," and "[a]t no point were the words 'arbitration agreement' mentioned or explained during this orientation." *Id.* at 12–13. Such allegations alone are not sufficient to show there was not a meeting of the minds because the standard is objective—not subjective. The objective facts show that there is an Arbitration Agreement, which Plaintiff signed. *See* Dkt. 17-1 at 9–12. Even without reading the Arbitration Agreement, Plaintiff can be bound by its terms because she signed it. *See St. Petersburg Bank & Tr. Co. v. Boutin*, 445 F.2d 1028, 1032 (5th Cir. 1971) ("One who reads a written document, or signs it (even without reading it) is bound by its terms."); *see also Celaya*, 2013 WL 4603165, at *3 ("[The plaintiff's] assertion that she does not recall reading and signing the Agreement . . . does not negate her acceptance of the Agreement's terms."); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) ("[The plaintiff's] failure to read the agreement does not excuse him from arbitration.").

However, if Plaintiff can show that she was fraudulently induced to sign the Arbitration Agreement, then she may not be bound by the terms of the Arbitration Agreement. Plaintiff also argues that she "was put through a standardized process [during the orientation] designed to keep her in the dark" as to what she was signing on the iPad. Dkt. 14 at 5–6. However, even if this allegation is sufficient to raise a claim that Plaintiff was fraudulently induced into signing the Arbitration Agreement, Plaintiff does not dispute that she accepted and acknowledged the Arbitration Agreement on a second date after the orientation. *See* Dkts. 14; 17-1 at 7. Defendants assert that when Plaintiff was re-hired in the summer of 2020, Plaintiff agreed to the Arbitration Agreement by accepting and acknowledging the agreement through Defendants' electronic workforce management portal. Dkts. 17 at 3; 17-1 at 15. Defendants include an exhibit from the portal, which shows the following instructions regarding Plaintiff's acceptance of the Arbitration Agreement:

> Please acknowledge receipt and understanding to the Arbitration Agreement.
> In the event I have any questions regarding any of the information covered, I understand that I should discuss it with my supervisor or the Boca Raton Human Resources department.
> By clicking "I Agree" below, you are:
> (a) acknowledging receipt of this document; and
> (b) agreeing that you are submitting your signature electronically and using an electronic signature to demonstrate your acceptance of this Arbitration Agreement.
>
> You acknowledge that your electronic signature is as legally binding as a handwritten ink signature.

Dkt. 17-1 at 7. The exhibit shows that Plaintiff checked a box that states, "I accept and acknowledge the company policy" on June 10, 2020. *Id.* Plaintiff does not contest that she acknowledged receipt of and agreed to the Arbitration Agreement on this second date. Nor has Plaintiff alleged any facts indicating that Defendants induced her to accept and acknowledge the Arbitration Agreement on this second date. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538

(5th Cir. 2003) ("It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." (citations omitted)). Further, after agreeing and acknowledging the Arbitration Agreement on this second date, Plaintiff continued working for Defendants. *In re Dallas Peterbilt*, 196 S.W.3d at 163 (holding the employee accepted the agreement to arbitrate as a matter of law when the employee received notice of the binding arbitration agreement, signed an acknowledgment form agreeing to be bound by the arbitration agreement, and commenced his employment after his acceptance). As a result, the Court finds that Plaintiff created a valid agreement to arbitrate when she accepted and acknowledged receipt of the Arbitration Agreement on June 10, 2020, and continued her employment with Defendants thereafter.

### 2.  Unconscionability

Plaintiff also argues that enforcement of the Arbitration Agreement is unconscionable because she "was not informed what she was agreeing to, was not provided a copy of what she was agreeing to and was not even told mandatory arbitration was a part of her orientation." Dkt. 14 at 8. Plaintiff further argues that the Arbitration Agreement is substantively unconscionable because it includes a statute of limitations to bring an arbitration claim which "make[s] parties unable to effectively vindicate their substantive rights." *Id.* Defendants argue that unconscionability is a question for the arbitrator and "[e]ven if this Court determined the question of unconscionability," "the Time Limits clause is not unconscionable." Dkt. 17 at 4.

"Unconscionable contracts . . .—whether relating to arbitration or not—are unenforceable under Texas law." *In re Poly-America, L.P.*, 262 S.W.3d at 348. "Under Texas law, unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive

9

unconscionability, which refers to the fairness of the arbitration provision itself." *Jones*, 625 F. Supp. 2d at 346 (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004)). "The Texas Supreme Court has also held that it is not unconscionable, without more, to require an at-will employee to accept a 'take-it-or-leave-it' arbitration provision as a condition of employment." *Id.* (citing *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002)).

First, the Court finds that the question of unconscionability is a question for the Court and not the arbitrator. "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Courts in the cases cited by Defendants found that the question of unconscionability was for the arbitrator when the agreement to arbitrate was a clause within a larger contract and the unconscionability challenge concerned the contract as a whole rather than the agreement to arbitrate contained therein. *See* Dkt. 17 at 3–4; *see also Lopez v. Cintas Corp.*, 47 F.4th 428, 433 (5th Cir. 2022). Here, the Arbitration Agreement is a standalone contract—not a clause within a larger contract. *See* Dkt. 17-1 at 9–12. Further, Plaintiff's arguments are all directed at the Arbitration Agreement itself. *See* Dkt. 14 at 6–9. Thus, the question of unconscionability should be addressed before ordering compliance with the Arbitration Agreement.

Plaintiff first argues that the Arbitration Agreement is procedurally unconscionable because she was not provided with a copy of the Arbitration Agreement, and she did not know that she was signing the Arbitration Agreement. *See* Dkt. 14 at 8. However, as discussed above, even if Plaintiff did not have access to and knowledge that she was signing the Arbitration Agreement on September 16, 2019, Plaintiff had access to and knew that she was signing the Arbitration Agreement when she accepted and acknowledged the Arbitration Agreement on June 20, 2020.

10

Moreover, the discriminatory acts Plaintiff alleges in the Complaint (Dkt. 1) all occurred after she agreed to the Arbitration Agreement in June 2020. *See* Dkt. 1 at 2–4. Plaintiff further argues the Arbitration Agreement was procedurally unconscionable because she "had no other alternatives but to continue [her employment] and had no opportunity to bargain to remove this clause." Dkt. 14 at 8. But the Texas Supreme Court has held that a "gross disparity in bargaining power" between an employee and employer resulting in no opportunity to negotiate an arbitration agreement is not unconscionable because "an employer has a general right under Texas law to discharge an at-will employee" and thus, an employer can "premise continued employment on acceptance of new or additional terms." *In re Haliburton*, 80 S.W.3d at 572. Accordingly, Plaintiff has failed to carry her burden to show that the Arbitration Agreement is procedurally unconscionable. *Lucas v. ProTrans Int'l, Inc.*, No. 14-cv-427, 2015 WL 13796689, at *6 (W.D. Tex. Feb. 13, 2015) (rejecting the plaintiff's argument that the defendant took advantage of the plaintiff's disparate bargaining ability when it disguised the agreement to arbitrate as simply part of the hiring process and told him to "just sign them").

Plaintiff next argues that the statute of limitations contained within Arbitration Agreement is substantively unconscionable. Dkt. 14 at 8. This statute of limitations provision is found in Paragraph 8, titled "Time Limits" and provides that "[a]ll [d]isputes must be brought under this [a]greement within the applicable limitations period for filing a charge or a lawsuit." Dkt. 17-1 at 11–12. Accordingly, the time limit for bringing a dispute under the Arbitration Agreement is identical to the time limit for bringing such a dispute in a court or other forum. The Court fails to see how this provision—setting the same time limit for bringing a claim in arbitration as in a court or other forum—is unconscionable. The Court therefore finds that Plaintiff has failed to meet her burden to show that the Arbitration Agreement is unconscionable based on the statute of

11

limitations provisions contained therein. *Cf. Celaya*, 2013 WL 4603165, at *3 (finding that an arbitration agreement that shortened the statute of limitations period was not unconscionable). Thus, the Court finds that the Arbitration Agreement is valid and enforceable.

**B.  Scope of the Arbitration Agreement**

Plaintiff has not contested that her claims fall within the scope of the Arbitration Agreement. *See* Dkt. 14. The Arbitration Agreement generally defines its scope as "all disputes between the parties that have not otherwise been resolved internally within the Company, which may otherwise be brought in a court or before a governmental agency, arising out of or related to the Employee's application for employment, employment, or termination of employment." Dkt. 17-1 at 9. The Arbitration Agreement further specifically identifies "statutory . . . claims of discrimination or harassment on the basis of . . . sex/gender." *Id.* at 10. Accordingly, the Court finds that Plaintiff's claim that Defendants violated Title VII when they discriminated against and terminated her because of her sex falls within the scope of the Arbitration Agreement and thus, is subject to arbitration.

Given that Plaintiff does not raise any applicable federal statute, policy, or waiver that would render the claims nonarbitrable, the Court finds that this case should be referred to arbitration. *See* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also Carter*, 362 F.3d at 297 ("[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991))).

**C.     Stay**

Defendants move the Court to dismiss this case upon a finding that all of Plaintiff's claims are arbitrable, relying on *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992). *See* Dkt. 11 at 10. However, after the Motion (Dkt. 11) was fully briefed, the Supreme Court issued its decision in *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024), which requires the Court stay a case pending arbitration when a party requests a stay. Here, Plaintiff requests that the Court stay the action pending the completion of arbitration. *See* Dkt. 14 at 9. Thus, the Court recommends that the case be stayed pending arbitration.

## IV.     RECOMMENDATION

For the foregoing reason, the Court recommends the Motion (Dkt. 11) be **GRANTED**. Specifically, the Court recommends that the parties be referred to binding arbitration, and that this suit be stayed pending the resolution of arbitration.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir.

1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 26th day of August, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE